[Civ. No. 15030. Second Dist., Div. Two. Nov. 29, 1945.]

ASSOCIATED INDEMNITY CORPORATION (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and THOMAS J. NAPIER, Respondents.

Syril S. Tipton for Petitioner.

Everett A. Corten, Dan Murphy, Jr., and R. C. McKellips for Respondents.

FOX, J. pro tem.—Thomas J. Napier was employed as a carpenter in July, 1943, at Bakersfield, California, by the Superior Oil Company. In May, 1944, while so employed

he was assisting in lifting a heavy timber when he was seized with a sudden onset of pain across his upper abdomen. This was accompanied by a feeling of nausea. Swelling was observed in the abdominal region in a day or two but this disappeared in about two weeks. Except for an hour's rest Mr. Napier was not forced to stop working. He did not consult a physician. He did, however, experience the recurrence of pain in this same area from time to time during the ensuing months. By July 16th the condition had become so annoying that he took a week's vacation. Upon his return after vacation, he felt he could not do the heavy work assigned to him and so informed his boss. Since lighter work was not provided he quit. Mr. Napier was ill and took it easy until about August 26th when he entered the employ of the Santa Fe Railroad Company. The first night on this new job, he "could hardly make it" according to his testimony. The second night he was pulling about 10 feet of an inch and a quarter water hose out from under a car. It caught on the rail and he "kind of jerked it." As he straightened up pain hit him in the stomach and a bulge in the epigastric region recurred. On August 30th Dr. Joe Smith examined Mr. Napier and found that he had a ventral hernia. On September 2d Dr. Morrison, chief surgeon of the Santa Fe, operated on Mr. Napier for this condition. The operation left Mr. Napier disabled for eleven weeks for which the commission awarded him compensation in the amount of $317. In his report Dr. Morrison says "The operative findings indicate that this hernia has been present for several months. . . ." Prior to his employment by the Santa Fe Mr. Napier was given a preemployment physical examination by Dr. R. M. Jones who reported "Abdomen normal."

Mr. Napier's application was not filed with the Industrial Accident Commission until January 12, 1945. At all times herein material the petitioner was the compensation insurance carrier of the Superior Oil Company.

Petitioner makes two contentions: (1) that the evidence is insufficient to support the finding that Mr. Napier "sustained a hernia while in the employ of the Superior Oil Company," and (2) that the claim is barred by the statute of limitations. Neither of these contentions is sound.

The argument on the first proposition is based on two circumstances: (1) the report of Dr. Jones to the effect that he did not discover a hernia on his external examina-

tion of Mr. Napier on August 22d; and (2) the hose-jerking incident on August 27th while he was working for the Santa Fe. Of course the report of Dr. Jones does not establish that Mr. Napier did not have a hernia. The trier of fact may well have concluded that the hose-jerking incident was wholly insufficient to cause the condition which Dr. Morrison found. As opposed to whatever inferences may be drawn from these circumstances is the testimony of Mr. Napier and the report of Dr. Morrison. These furnish substantial evidentiary support for the finding that Mr. Napier sustained his said injury ''while in the employ'' of the oil company. The finding of the commission cannot therefore be disturbed by a reviewing court. (*Limited Mutual Compensation Insurance Co.* v. *Industrial Acc. Com.*, 37 Cal.App. 2d 50 [98 P.2d 837] ; *Stoll* v. *Industrial Acc. Com.*, 20 Cal. 2d 440 [126 P.2d 865].)

On the question as to when the injury occurred and therefore the date on which the six-month statute of limitations started to run for filing application for compensation (Lab. Code, § 5405 (a) ), the commission found that ''Said injury was caused by strain while lifting in the month of May, 1944, but it was first reasonably discoverable and apparent that compensable injury had been sustained on August 30, 1944, and said last mentioned date therefore constitutes the date of injury herein.'' Therefore since Mr. Napier's application was filed on January 12, 1945, his claim to compensation was not barred by the aforesaid statute of limitations.

In a case of this kind where the injury is latent the statute of limitations does not begin to run until the employee knows or should in the exercise of ordinary care have known that he has sustained a compensable injury. (*Continental Casualty Co.* v. *Industrial Acc. Com., and George Glantz,* 11 Cal.App.2d 619 [54 P.2d 753] ; *Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 P.2d 933] ; *Selders* v. *Cornhusker Oil Co.*, 111 Neb. 300 [196 N.W. 316] ; *McGuire* v. *Phelan-Shirley Co.*, 111 Neb. 609 [197 N.W. 615] ; *Kostron* v. *American Packing Co.*, 227 Mo.App. 34 [45 S.W.2d 871]; *Guderian* v. *Sterling S. & R. Co.*, 151 La. 59 [91 So. 546] ; *Wheeler* v. *Missouri Pac. R. Co.*, 328 Mo. 888 [42 S.W.2d 579] ; *Williams* v. *Industrial Acc. Com., ante,* p. 136 [161 P.2d 979].) When an employee is chargeable with such knowledge is essentially a question of fact for the commission.

824

■ Also, the burden of proving that the claim for compensation was barred by the statute of limitations was upon petitioner who opposed the claim. (*Williams* v. *Industrial Acc. Com., supra.*)

■ The instant case is closely analogous to the Glantz case, *supra.* In that case Mr. Glantz who was employed as a metal worker suffered an injury to his left wrist about July 21, 1932. He "thought he had sprained his wrist, had it bound with tape and continued with his work. He was not incapacitated for work for a period of seven days though he might have missed a few days' work owing to pain in this wrist. On December 15, 1934, he suffered a second injury to the same wrist. While working on the door of an automobile it fell, cutting the flesh on the wrist to the bone. He consulted a physician and X-rays were taken which disclosed an old fracture of one of the bones of the wrist which had not united. It is admitted that this fracture occurred in the accident of July 21, 1932. It was the conclusion of the examining physicians that an operation was necessary to unite the two fragments of the bone. On February 11, 1935, Glantz filed with the Industrial Accident Commission an application for the adjustment of his claim growing out of his first injury." It was contended that this claim was barred by the statute of limitations. The commission, however, held that it was not barred and the court affirmed the award. "It is clear," says the court, "that Glantz had no idea that he had a broken bone in his wrist until informed of that fact by physicians in December, 1934. He believed that his wrist had been sprained and that it was making a slowly progressive recovery." A similar observation could properly be made here with respect to Mr. Napier's knowledge of his hernia. ■ The workmen's compensation law does not award compensation for mere pain unless it is of such a character as to raise a presumption of incapacity to earn. (*Marsh* v. *Industrial Acc. Com., supra.*) No such condition is here involved. ■ The object of the law is to make amends for a disability attributable to the employment. (*Marsh* v. *Industrial Acc. Com., supra.*) " 'The term "injury" then is to be understood as connoting a compensable injury, and is correlated to an incapacity or disability justifying a compensatory award. (Citing authority.) Injury and compensable disability are thus more nearly synonymous expressions than are date of injury and date

of accident.' " (*Continental Casualty Co.* v. *Industrial Acc. Com., supra,* p. 621.) The court concluded in the Glantz case (pp. 623-624) that "the injury to Glantz occurred when it was discovered that he had a broken bone in his left wrist which would require an operation to cure, which would incapacitate him from working, and would justify a compensatory award. . . . It is true that he suffered pain and did lighter work than before July 21, 1932, but he did not suffer a compensable injury at that time. . . ." Hence his application for compensation was not barred by the statute of limitations. The principles of the Glantz case should govern in the instant case.

 Napier testified he did not know he had this injury. The pain, temporary nausea and swelling which Mr. Napier experienced might well indicate a hernia or some similar condition to a doctor, but such symptoms would not necessarily be so diagnosed by a layman. This is understandable for, as pointed out in *Singer* v. *Industrial Acc. Com.* (105 Cal.App. 374, 376 [287 P. 567]) which involved a hernia injury, "A workman, as most frequently happens, is unfamiliar with the development of injuries of this character and certain symptoms mean little or nothing to him unless they are objective and definitely pronounced." But an employee is not to be deprived of compensation because he fails to make a correct medical diagnosis. (*Winthrop* v. *Industrial Acc. Com.,* 213 Cal. 351 [2 P.2d 142]; *Continental Casualty Co.* v. *Industrial Acc. Com., supra,* p. 622.) The failure of Dr. Jones in his preemployment examination of Mr. Napier on August 22d to discover this condition supports the finding of the commission that "it was first reasonably discoverable and apparent that compensable injury had been sustained on August 30, 1944. . . ." Inferences in support of this finding may also be drawn from the testimony and conduct of Mr. Napier. This finding is therefore not without sufficient evidentiary support. In any event, it cannot be said that the evidence, as matter of law, was such as to require a contrary finding. Hence Mr. Napier's claim was not barred by the statute of limitations.

The award is affirmed.

McComb, Acting P. J., and Wilson, J., concurred.